**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAURA COPELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV1534MLM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Jo Anne B. Barnhart ("Defendant") denying the application of Laura Copeland ("Plaintiff") for Social

Security benefits under Title II of the Social Security Act and for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of the

Complaint. Doc. 15. Defendant has filed a brief in support of the Answer. Doc. 17. The parties

consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28

U.S.C. § 636(c). Doc. 7.

**I.**
**PROCEDURAL HISTORY**

Plaintiff filed applications for disability benefits alleging a disability onset date of May 28,

2002. (Tr. 108-110). The applications were denied. (Tr. 28-31). Plaintiff requested a hearing, which

was held August 23, 2004, before Administrative Law Judge ("ALJ") Michael Hauber. (Tr. 210-

247). By decision dated November 14, 2004, the ALJ determined that Plaintiff was not under a

disability as defined in the Social Security Act. (Tr. 14-20).

On July 22, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's

decision. (Tr. 3-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

# TESTIMONY BEFORE THE ALJ

Plaintiff testified that at the time of the hearing she was living in a house with her three children, ages twelve, four, and three months. (Tr. 221). Plaintiff further testified that she has an associate's degree in general studies and that she intends to go back to school to "try to get into medical stenography." Plaintiff also said that she had been a store manager at Michael's Arts and Crafts and at Frank's Nursery and Crafts and a department manager at J.C. Penney's and Value City. (Tr. 226-27).

Plaintiff further testified that she goes downstairs in her home once a day; that she has a driver's license; that she drives a minivan; that she drives once a day; that her twelve year old daughter does the laundry; that Plaintiff does the laundry every three weeks; that she goes to the market once a week; that she goes out to eat once every two weeks; that she cooks once a day; that she does not vacuum, mop the floors, dust, take out the trash, or make the bed; that during the day she watches television and does a lot of studying; that she change diapers six times a day; that she almost always has somebody help her lift her baby out of the swing; that she has assistance putting the baby into and taking the baby out of the car; that she tries to bathe and dress the baby; and that she has had help taking care of the baby since she was injured on May 28, 2002. (Tr. 219-25, 238-39). Plaintiff also said that she can bathe/shower herself, brush her own teeth, comb her own hair, pick up a knife and fork to eat, use both hands to drive, and button and zip her clothes. (Tr. 236). Plaintiff further said that during the day she lies down "probably five to six times"; that when she lays down she does so for forty-five minutes; that this has been going on since her July 2004 surgery; and that while she is laying down her four-year-old plays on the floor.

Plaintiff testified that she has pain which shoots down the back of her leg up to her knee and that doctors have told her this pain is "affiliated with the back pain ... because of the sciatic nerve."

(Tr. 244-45). Plaintiff further testified that since surgery in July 2004 she had been seeing a doctor every three weeks and that she saw his doctor once in the month preceding the hearing. (Tr. 220-21). Plaintiff also testified that doctors have told her to lose weight; that in the year prior to the hearing she gained ten pounds; that Dr. Schoedinger put her on a diet; that since the prior May she had been 100% compliant with this diet; that while she was pregnant she could not diet; and that she was fifty per cent compliant with the diet in 2002 and 2003 until she became pregnant. (Tr. 227-28).

Plaintiff said that she can lift fifteen pounds and can be on her feet and sit comfortably for fifteen to twenty minutes. (Tr. 229-30). Plaintiff further said that she has difficulty sleeping; that she wakes up in pain; that she takes pain medication to help her sleep; that she had built up "an endurance" to the medication; that she sleeps for four to six hours; and that her sleep "is not consistent. It's not straight." (Tr. 244).

Plaintiff testified that she had an accident at work in September 2001; that she had continuous symptoms after that accident; that she kept working after this accident and missed one day of work; and that a doctor told Plaintiff that he thought she had a pulled a muscle in her shoulder and in her low back. (Tr. 231).

Plaintiff further testified that in May 2002 she injured herself at work when she was doing heavy lifting; that after a week-end of rest she went to the emergency room; that she had a workers' compensation case which was settled; that she was given a twenty-five percent disability for her back; that at the time of the hearing she was in physical therapy for her back; and that her disability would be rated after she completed therapy.

Plaintiff said that in 2003 she was given a twenty-five percent disability for carpal tunnel; that she cannot close her hands more than a certain percentage; and that because of carpal tunnel she cannot grip wet clothes enough to put them into the dryer. (Tr. 32-35, 237).

Plaintiff further said that her children are fathered by multiple people; that she receives support from one of the fathers; that she receives food stamps; and that she receives $471 a month from Worker's Compensation. (Tr. 243).

### III.
### MEDICAL RECORDS

Records of St. Anthony's Medical Center ("St. Anthony's") dated May 27, 2002, reflect that Plaintiff was seen in the emergency room for back pain and that she injured her back three weeks earlier. Records of this date further reflect that the diagnosis was low back syndrome and that Vicodin was prescribed. (Tr. 152-54).

George R. Schoedinger, III, M.D., reported on June 6, 2002, that Plaintiff complained of low back and left lower limb pain and that Plaintiff was 5'2" and weighed 160 pounds. Dr. Schoedinger further reported on this date that an orthopedic examination noted that Plaintiff's spine was straight with no tilt or list; that the normal lumbar lordosis was preserved without palpable paravertebral muscle spasm; that Plaintiff noted tenderness to palpatation at L4-L5 and L5-S1 levels; that she lacked 20" of touching the extended fingers to the floor when flexing; that extension was decreased and lateral bending was slightly decreased to either side; that heel walking on the left was impossible due to pain in and about her left lower limb posteriorly, extending from the hip to the heel; heel walking on the right is unimpaired; that there was no evidence of motor weakness in either leg; that vibratory sensitivity was intact; that straight leg raising was possible on the left to ninety degrees productive of left low back pain and on the left to ten degrees productive of low back pain radiating into the posterior surface of the left thigh and calf to the level of the heel; and that there was full active and passive range of motion of all extremity joints. (Tr. 119)

Dr. Schoedinger further reported on June 6, 2002, that x-rays of Plaintiff's lumbar spine, taken at St. Anthony's on May 28, 2002, showed no evidence of fracture, either recent or old,

4

dislocation, neoplastic disease, congenital anomaly, chronic infection or metabolic disturbance; that

five functional non-rib bearing lumbar segments were noted; and that vascular clips were present in

the right upper abdominal quadrant and were consistent with Plaintiff's history of prior surgery. (Tr.

120). Dr. Schoedinger also reported on this date that Plaintiff's symptoms appeared to reflect

radicular irritation arising in the lumbar spine; that Plaintiff may have sustained a lumbar disc rupture;

that Plaintiff was scheduled for an MRI of the lumbar spine subsequent to which appropriate

recommendations would be made; and that he told Plaintiff to lose weight and to remain off work.

(Tr. 120).

In a Patient Status Report of June 6, 2002, Dr. Schoedinger reported that Plaintiff was unable

to work. (Tr 121).

Records of David C. Haueisen, M.D., dated June 25, 2002, reflect that Plaintiff weighed 155

pounds and that she was seen for possible carpal tunnel syndrome and possible overuse

tenosynovitis.[1] Records of this date further reflect that Plaintiff reported feelings like fire through her

hands; that she sometimes had numbness in her fingers; and that the numbness involved all of the

fingers, particularly on the right. Notes state that physical examination showed fixed sensory

changes to light touch in the median nerve distributions bilaterally, no thenar weakness or atrophy

bilaterally, wrist extension (in degrees) of 75/75, wrist flexion of 85/85, grip strength in Jamar pounds

of 50/65, full finger range of motion without evidence of triggering, and no external swelling or

tenosynovitis. Notes also state that an x-ray of Plaintiff's right hand showed overall normal carpal

bone architecture; that the joints were well maintained; and that there were no significant thumb basal

---

[1]    Notes of June 25, 2002 identify the reporter as "DCH." A nerve conduction study
of July 2, 2002, undertaken for purposes of diagnosing possible carpal tunnel syndrome references
a "David C. Haueisen, M.D." (Tr. 111). The court will assume, therefore, that DCH is Dr.
Haueisen.

joint degenerative changes seen. The report stated that Plaintiff's symptoms were consistent with overuse tenosynovitis; that Plaintiff could have "some underlying carpal tunnel syndrome; and that the plan was for Plaintiff to have nerve conduction studies to evaluate the severity of any ongoing carpal tunnel syndrome. (Tr. 114).

An MRI report dated June 25, 2002, states that the impression was large compressive central and left paracentral L5-S1 disc herniation of the extrusion type; broad central L4-5 noncompressive disc herniation of the protrusion type; and degenerative disc changes at L4-5, L5-S1. (Tr. 115).

Dr. Schoedinger reported on June 27, 2002, that he advised Plaintiff that the MRI of June 25, 2002 revealed evidence of posterior disc protrusions at L4-L5 and L5-S1 accompanying degenerative change. Dr. Schoedinger noted that Plaintiff was unable to work because of her symptoms and that he told Plaintiff that until she is unable to live with her symptoms he did not recommend that she have surgery. (Tr. 110).

Notes of Dr. Haueisen reflect that Plaintiff had nerve conduction studies on July 2, 2002, and that these studies showed evidence of moderately advanced right carpal tunnel syndrome with a motor latency of 5.8, mild left carpal tunnel syndrome with some sensory prolongation, and some early EMG changes in the right thenar musculature without any frank denervation.[2] Dr. Haueisen's notes further reflect that Plaintiff reported development of a soft tissue mass about the volar pulp of the long finger along the radial side and that "since that time she has had almost constant numbness in the long fingertip." Dr. Haueisen's notes also state that examination showed that Plaintiff had a mass along the radial side of the long finger; that Plaintiff had paraesthesias when the mass was pressed; and that the mass could "represent something like a giant cell tumor of tendon sheath origin.

---

[2]    These notes reflect the name of the reporter as "DCH" and do not reflect the date upon which Plaintiff was seen by the reporter. The nerve conduction study of July 2, 2002, references, however, "David C. Haueisen, M.D." (Tr. 111).

Dr. Haueisen's notes further state that the finger mass was not related to Plaintiff's work and that Plaintiff was told she could go ahead with a right carpal tunnel release; that the mass could be excised at that time; and that she might have permanent numbness about the tip of the long finger from the dissection. (Tr. 97).

Dr. Schoedinger reported on July 8, 2002, that he spoke with Plaintiff on this date and she indicated that she was not working "by reason of her continue[d] low back and lower limb pain which she feels is increasing in severity." Dr. Schoedinger recommended only non-surgical measures and further reported that he "told [Plaintiff] that I feel it is of utmost importance that she control her weight. She is to embark on a vigorous weight control program and will be seen for office folowup in two weeks. In the interim, she is to remain off work." (Tr. 108).

Dr. Schoedinger reported on July 19, 2002, that Plaintiff reported continued difficulty with her low back and left lower limb; that he believed that Plaintiff's symptoms were attributable to disc pathology in the lumbar spine; and that he thought that Plaintiff's "situation was aggravated by having helped a friend move a sleeper-sofa." Dr. Schoedinger recommended only nonoperative measures on this date. (Tr. 107).

Dr. Schoedinger reported that he saw Plaintiff August 2, 2002, at which time Plaintiff reported that she was not working; that she had persistent pain about her low back; that she was having difficulty losing weight; and that her left lower limb complaints continued and were aggravated by activities requiring lumbar flexion. Dr. Schoedinger reported on this date that Plaintiff was obese at 162 pounds; that she was 5'5" tall; that her optimum weight was approximately 110 to 120 pounds; that he advised Plaintiff that "weight loss is essential to her"; that Plaintiff would be seen when her weight was decreased to 120 pounds; and that Plaintiff was given leave to return to work with a ten pound weight lifting restriction. Dr. Schoedinger completed a form titled Patient Status Report and

checked the box indicating that Plaintiff was "able to return to work on August 5, 2002," and with the restrictions of "no lifting more than 10 pounds." (Tr. 105-106).

Dr. Schoedinger reported that he saw Plaintiff on August 22, 2002, and that she reported that she was working in a restricted fashion as directed previously; that she continued to have pain about her low back and left buttock with pain extending posteriorly about the thigh to the level of the knee; and that her usual job-related duties required lifting seventy-five to eighty pounds on a regular basis. Dr. Schoedinger reported that on physical examination Plaintiff remained obese at 150 pounds; that her optimum weight was 110 to 120 pounds; that she had decreased sensation to light touch over the lateral surface of the right thigh, calf, and foot; and that there was weakness of the left extensor hallucis longus. Dr. Schoedinger also reported that he told Plaintiff that she had reached maximum medical improvement "since she does not believe she is able to return to her usual job-related duties and should be evaluated with functional capacity testing." Dr. Schoedinger stated that Plaintiff was to remain off work in the interim and pursue her weight control program. In a Patient Status Report, dated August 22, 2002, Dr. Schoedinger checked the box indicating Plaintiff was "unable to work at present. Return to work date is indefinite." (Tr. 102-103).

Dr. Schoedinger's office notes of September 6, 2002, reflect that Plaintiff called to report that her pain had increased in intensity in the prior three to four days; that Vicodin was no longer controlling her discomfort; and that since June she lost twelve pounds. Notes of this date further reflect that Plaintiff was prescribed Lorcet and was told to come into the office for re-evaluation. (Tr. 96).

Records of St. Anthony's Medical Center Emergency Room, dated September 6, 2002, reflect that Plaintiff was seen for back pain which was shooting down her left leg and that her condition on discharge was good. (Tr. 144).

Dr. Haueisen notes reflect that on September 26, 2002, Plaintiff underwent a right carpal tunnel release and an excisional biopsy of a mass volar radial aright long finger DIP joint. Dr. Haueisen's records state that Plaintiff tolerated the procedure well. (Tr. 99). A surgery pathology report of this date states that the diagnosis of the "soft tissue, right long finger biopsy," was "giant cell tumor of tendon sheath." (Tr. 100).

Notes from Haueisen, dated October 2, 2002, reflect that Plaintiff was "six days postop"; that she was "doing fine with minimal pain"; that the path report showed a giant cell tumor; that she was converted to a velcro closure wrist splint that she could wear during the day; and that she should return in seven to eight days for suture removal. (Tr. 96).

Dr. Schoedinger reported on October 4, 2002, that Plaintiff was seen on this date and that Plaintiff said that she was not working; that she had increasing amounts of pain in her low back and pain radiating into her left lower limb; and that she wished to pursue further treatment for her low back. Dr. Schoedinger reported that upon examination Plaintiff was obese at 164 pounds; that she had decreased sensation to light touch over the lateral surface of the left thigh and calf; and that she had no motor weakness, pathologic reflex or vascular insufficiency in either lower limb. Dr. Schoedinger further reported that he believed Plaintiff's symptoms were attributable to lumbar disc pathology; that he advised Plaintiff that until her weight was controlled he had little to offer her in terms of invasive treatment; that she was "to embark on a vigorous weight control program and was given a 750 calorie-per-day diet to follow"; that she was to return in one month; and that in the interim she was to remain off work. (Tr. 95).

Dr. Haueisen reported on October 9, 2002, that Plaintiff was two weeks status post right carpal tunnel release with an excision mass of the right long finger; that she was doing well; that she had good finger range of motion, flexion and extension; that she was to wear the velcro wrist splint

at night for one more week; and that she should return in two weeks for a range of motion check. Dr. Haueisen further reported that Plaintiff said that she no longer needed pain medication; that she was not taking anti-inflamatories; and that she no longer had any numbness or tingling at night. (Tr. 94).

Dr. Haueisen reported on October 23, 2002, that Plaintiff reported that she was doing well and had no numbness or tingling in her hand and that she had pain when vacuuming; that she had a flexor sheath ganglion cyst; that palpation of the cyst caused "2+ tenderness"; that he injected the cyst; that after being injected the cyst was no longer palpable; and that Plaintiff was to return in six weeks for a check of her grip strength.  (Tr. 94).

David R. Lange, M.D., reported that he saw Plaintiff on March 31, 2003, for an independent spine evaluation.  Dr. Lange reported that Plaintiff said her worst problem was cramping in the left posterior calf and that she has pain in the left buttock; and that she "actually ha[d] negligible low back pain."  Dr. Lange further reported that Plaintiff "believe[d] that she would be working normal and she would not even be in a physician's office" if her back were her only area of discomfort.  Dr. Lange reported that he conducted a musculoskeletal examination; that Plaintiff complained of some discomfort in the left buttock and posterior thigh with extension; that the left ankle jerk was depressed as compared to the right objectively; that there were negligible signs of symptom magnification; that the straight leg raise exam brought on symptoms; and that with full extension with neutral rotation there was no complaint.  Dr. Lange concluded that Plaintiff may or may not have reached her maximum improvement; that surgery was not an unreasonable treatment alternative for Plaintiff; that the procedure would be relatively small and straight forward; that if Plaintiff did not have surgery she had reached maximum improvement; that permanency was expected whether or not

she had surgery; and that Plaintiff had a fifteen percent permanent partial impairment of the whole person. (Tr. 161-65).

Ward Straham, MS, PT, of Pro Rehab, reported on June 21, 2004, that Plaintiff was seen for an initial evaluation on June 8, 2004; that Plaintiff's treatment included lumbar rehabilitation, lower extremity flexibility exercises, general conditioning, modalities for pain control, and a home exercise program. Therapist Straham further reported that Plaintiff had six therapy sessions; that she demonstrated mild progress with respect to improved flexibility, trunk ROM, and ambulation; that subjectively Plaintiff "noticed slight improvement, but nothing significant"; that Plaintiff said that she had soreness in her back from injections she had received; that Plaintiff said that the injections gave her some significant relief and that the pain came back a few days later; that Plaintiff noticed decreased numbness and pain down the left leg; that pain was still present; and that her pain level decreased from 4/10 to 3/10 and her "Oswestry score decreased from 50% to 44%," which "still indicates severe perceived disability." (Tr. 175).

Saul Silvermintz, M.D., of the Forest Park Medical Clinic, reported that he examined Plaintiff on July 27, 2004. Dr. Silvermintz reported that Plaintiff, who was thirty-three years old at the time, last worked in May 2002 at a retail shoe store as a department manager; and that Plaintiff's chief complaints were carpal tunnel syndrome and ruptured disc in her back. Dr. Silvermintz further reported that Plaintiff said that since her carpal tunnel surgery the pain in her right hand had disappeared; that the hand was better; that she still had difficulty with grip; and that since she had been off from work all of the symptoms of carpal tunnel had disappeared. In regard to Plaintiff's ruptured disc, Dr. Silvermintz reported that Plaintiff said she injured her back at work two years prior; that she had to quit work due to the pain; that an MRI showed she had a ruptured disc and degenerative disc; that she had surgery about two and a half weeks prior to Dr. Silvermintz's

examination; that since the surgery she was no better; that prior to the surgery she had pain all the time in the left buttock extending down the left leg posteriorly to the knee; that since the surgery she had the same pain plus it extended all the way around to her back which pain she did not have prior to surgery; that she could not put full weight on her leg without pain; and that she used a cane to help her go up steps.

Dr. Silvermintz noted that Plaintiff weighed 182 pounds; that her extremities were without malformation, swelling, or edema and there was no range of motion limitation; that Plaintiff limped on the left leg because of pain; that she got on the examination table without difficulty and had some difficulty getting off; that she had no trouble with fine finger movement of her hands; and that straight leg raising seated and supine was limited on the left; and that there was no change in sensation to pinprick or light touch. Dr. Silvermintz reported that his clinical impression was status post lumbar disc surgery with residual pain, range of motion limitation of lower extremity; status post right carpal tunnel surgery with residual weakness of grip; and moderate obesity. (Tr. 192-94).

A Medical Source Statement of Ability to do Work-Related Activities (Physical), dated July 27, 2004,[3] states that Plaintiff can lift less than ten pounds occasionally; that she can frequently lift less than ten pounds; that she can stand and/or walk less than two hours in an 8-hour workday; that she can sit less than about six hours in an 8-hour workday; and that her ability to push and/or pull is limited in her upper and lower extremities. The Medical Source Statement further states that Plaintiff is frequently limited in regard to climbing, balancing, kneeling, crouching, crawling, and stooping; that

---

[3]        Plaintiff states that Dr. Silvermintz completed this Medical Source Statement. The court notes that the signature of the person completing this document is not legible. As Defendant does not refute this statement the court will accept that the Medical Source Statement is signed by Dr. Silvermintz.

she is limited in regard to manipulative functions; and that she is has no visual/communicative and environmental limitations. (Tr. 196-99).

## IV.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Eichelberger, 390 F.3d at 590-91.

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d

860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result

in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  The plaintiff has the burden of proving that he has a disabling impairment.  42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced."  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc).  The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  Nevland, 204 F.3d at 857.

## V.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  Onstead, 962 F.2d at 804.  Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position.  Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ improperly evaluated medical opinion upon determining her residual functional capacity ("RFC"); that the ALJ failed to properly develop the record in regard to Dr. Schoedinger; that the ALJ failed to properly determine Plaintiff's RFC according to Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000), and Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); and that the ALJ failed to consider Plaintiff's subjective complaints as required by Polaski. Doc. 14 at 11.

### A.      Medical Opinion:

In support of her claim that the ALJ failed to consider medical opinion Plaintiff argues that the ALJ failed to properly consider Dr. Silvermintz's opinion including his statements that Plaintiff should not return to work.  Plaintiff also argues that the ALJ expressly rejected the opinion of her treating doctor, Dr. Schoedinger, that she is unable to work and that Dr. Lange's opinion is consistent with that of Dr. Schoedinger.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to considerable weight. Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000)(citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)).  However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir.

1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlin, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424).

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). See also Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence). On the other hand, a treating physician's observations should not necessarily be treated as conclusory where the doctor had "numerous examinations and hospital visits" with a claimant. See Turpin v. Bowen, 813 F.2d 165, 171 (8th Cir.1987).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). Additionally, SSR 96-2p clarifies that 20 C.F.R. § § 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

The Eighth Circuit holds that "if a treating physician ... has not issued an opinion which can be adequately related to the [Social Security Act's] disability standard, the ALJ is obligated ... to address a precise inquiry to the physician so as to clarify the record." Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984) (quoting Lewis v. Schweiker, 720 F.2d 487, 489 (8th Cir.1983).

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.").

The duty to develop the record includes the duty to develop the record as to the medical opinion of the claimant's treating physician. Higgens v. Apfel, 136 F. Supp.2d 971, 978 (E.D. Mo. 2001) (citing Brown v. Bowen, 827 F.2d 311, 312 (8th Cir.1987); Brissette v. Heckler, 730 F.2d 548, 549-50 (8th Cir.1984); Thorne v. Califano, 607 F.2d 218, 219-20 (8th Cir.1979). The Regulations provide at 20 C.F.R. § 404.1624(c)(3) that, "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional

evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information." The Eighth Circuit holds that "'if a treating physician has not issued an opinion which can be adequately related to the [Social Security Act's] disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.'" Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984) (quoting Lewis v. Schweiker, 720 F.2d 487, 489 (8th Cir.1983). However, where a treating physician does not express an opinion as to whether a claimant satisfied the Social Security Act's disability listings, the claimant must demonstrate that the opinions of the treating doctors could not "be adequately related to" the disability listings. Id. See also Weiler v. Apfel, 179 F.2d 1107, 1111 (8th Cir. 1999). Where the record contains medical records and opinions of doctors, other than a claimant's treating physician, each of whom evaluated the claimant's limitations, an ALJ need not recontact the claimant's treating doctor. Id. Additionally, "[w]hile the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" Goff v. Barnhart, 421 F.3d 785, 791(8th Cir. 2005) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).

Upon reaching his conclusion that Plaintiff is not disabled the ALJ in the matter under consideration considered that Plaintiff suffered an on the job injury to her back and shoulder in 2001 and that subsequently her symptoms disappeared until she was seen in May 2002 when her pain increased after helping a friend move a sofa. Plaintiff testified at the hearing that she had continuous pain after her 2001 on the job injury and that she again injured herself at work in May 2002 and went to the emergency room a week later as a result of this second injury. Treatment notes reference an

on the job injury as the cause for Plaintiff's 2002 back injury. On the other hand Dr. Schoedinger's notes of July 19, 2002 do suggest that Plaintiff's back pain was aggravated by her moving a sofa. To the extent that it can be said that the ALJ misstated the facts in regard to the cause of Plaintiff's 2002 back injury, the court notes that the cause of Plaintiff's re-injured back is not relevant to the matter under consideration; what is relevant is whether Plaintiff is disabled as a result of her medical condition. Moreover, an "arguable deficiency in opinion-writing technique" does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

In regard to Plaintiff's re-injuring her back in May 2002 the ALJ considered an x-ray report, range of motion studies and that Plaintiff was advised to lose weight and remain off work. (Tr. 15). It is clear from the substance of ALJ's decision, that while he does not reference Dr. Schoedinger in regard to records which the ALJ's suggests are from May 2002, that the ALJ was addressing Dr. Schoedinger's report of June 6, 2002, including Dr. Schoedinger's notes relating to range of motion studies, physical examination, and x-rays taken of Plaintiff's lumbar spine.

Further, the ALJ considered an MRI and advice which Dr. Schoedinger gave to Plaintiff as a result of this report, including telling her that he did not recommend surgery until she was unable to live with her symptoms. (Tr. 15). The ALJ did not reference the date of the MRI or the date that Dr. Schoedinger gave advice to Plaintiff based on the MRI. It is clear from the context of the ALJ's decision, however, that the MRI report to which the ALJ was referring was that of June 25, 2002 and that the advice of Dr. Schoedinger to which the ALJ was referring was that of June 27, 2002. In any case, it is clear from the record that the ALJ did consider all Dr. Schoedinger's June 2002 records. These deficiencies in the ALJ's opinion-writing technique do not require the court to set aside his

decision as they had no bearing on the outcome of Plaintiff's case. See Reynolds, 82 F.3d at 258; Carlson, 74 F.3d at 871.

The ALJ did not specifically reference Dr. Schoedinger's telephone conversation with Plaintiff on July 8, 2002, in which he told Plaintiff that he recommended non-surgical procedures and that she control her weight nor did the ALJ specifically reference Dr. Schoedinger's notes of July 19, 2002. Dr. Schoedinger's notes of July 2002 reflect a repetition of advice which he gave Plaintiff the prior month regarding her weight and treatment and which advice was considered by the ALJ. The ALJ did not specifically reference a phone call from Plaintiff to Dr. Schoedinger on September 6, 2002, during which conversation Dr. Schoedinger advised Plaintiff to come into the office, which she did. The ALJ did, however, address Dr. Schoedinger's subsequent notes of October 4, 2002, in which he addressed Plaintiff's weight and concluded that he had little to offer Plaintiff in terms of invasive treatment until her weight was under control. As such, any omissions of the ALJ in regard to Dr. Schoedinger's notes do not effect the outcome of this case. To the extent that the ALJ did not specifically refer to all medical records of Dr. Schoedinger relevant to Plaintiff's alleged disabling conditions, an omission does not require a court to set aside an administrative finding when that omission had no bearing on the outcome. Also, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted ... [and][a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995); Reynolds, 82 F.3d at 258 ("Although specific delineations of credibility findings are preferable, an

ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence.") (citing Carlson v. Chater, 74 F.3d 869 (8th Cir. 1996)).

The ALJ considered Dr. Schoedinger's report of August 2, 2002 noting that Dr. Schoedinger reported on this date that Plaintiff was to return to work, that Plaintiff's weight had decreased to 120 pounds, and that he limited her to lifting ten pounds.[4] (Tr. 15). The ALJ further considered that in late August 2002 Dr. Schoedinger reported that Plaintiff had been working; that she was taken off work; that she had reached her maximum medical improvement since she believed she was not able to do her usual job related duties; and that Plaintiff was referred for functional capacity testing. (Tr. 15). The court notes that Dr. Schoedinger's notes of August 22, 2002 further reflect that Plaintiff said that her usual job duties required lifting seventy-five to eighty pounds on a regular basis. Significantly, on August 22, 2002, Dr. Schoedinger did not find that Plaintiff was unable to engage in any work but only that she could not perform her regular job duties which required heavy lifting. Also, on October 4, 2002, Dr. Schoedinger reported that he advised Plaintiff that she should remain off of work until she returned in a month. When Dr. Schoedinger opined that Plaintiff could not return to work he was referencing her current job; he was not opining that Plaintiff could not engage in any work activity. The inability to return to past work speaks only to one element of determining whether a claimant is disabled. Indeed, if a claimant is unable to perform her past relevant work, she is disabled only if she is prevented from performing other work. 20 C.F.R. § §416.920(f), 404.120(f). As such, the court finds that Plaintiff's suggestion that Dr. Schoedinger found that Plaintiff is totally disabled is without merit.

---

[4]     The ALJ addressed this report without reference to the specific day in August.

The ALJ stated that there were inconsistencies in Dr. Schoedinger's records.[5] Reviewing Dr. Schoedinger's records as set forth above, the court does not find Dr. Schoedinger's records are inconsistent but rather finds that he addressed Plaintiff's condition as it developed, addressed her symptoms as they presented, and reported his findings. The court finds, therefore, that the ALJ's conclusion that there are inconsistencies in Dr. Schoedinger's records is not supported by substantial evidence.

In regard to Plaintiff's back pain the ALJ also considered the March 2003 report of Dr. Lange in which report Dr. Lange opined, after examining Plaintiff, that she had an approximate fifteen percent permanent partial disability and that Plaintiff had slight improvement from physical therapy. (Tr. 15-16). The court notes that Dr. Lange, who provided a spine evaluation, also reported that Plaintiff said she had "negligible" low back pain and that if her back were her only area of discomfort she would be working.

The ALJ also considered that Plaintiff told Dr. Lange that her employer did not have any positions available with a 10-pound lifting restriction as imposed by Dr. Schoedinger. (Tr. 17). The ALJ concluded that this suggests that if Plaintiff's employer had such positions available she would not currently be claiming that she is disabled and that the reason for Plaintiff's continued unemployment is not solely the alleged impairment.

---

[5]     Dr. Schoedinger reported on July 8, 2002, that Plaintiff was to remain off work for two weeks. (Tr. 108). He reported on August 2, 2002, that Plaintiff was restricted to lifting ten pounds and stated on a form titled Patient Status Report that Plaintiff would be able to work on August 5, 2002, with the restriction of not being able to lift more than ten pounds. (Tr. 105-106). Subsequently, on August 22, 2002, and October 4, 2002, Dr. Schoedinger reported that Plaintiff was to remain off work. (Tr. 95, 102-103). Also, on August 22, 2002, Dr. Schoedinger checked a box a Patient Status Report indicating that Plaintiff was "Unable to work at present. Return to work date is indefinite." (Tr. 102-103)

The ALJ further considered the July 2004 report of examining consultant Dr. Silvermintz in which Dr. Silvermintz noted upon physical examination that Plaintiff limped on the left leg due to pain; that she used a cane to get off the examining table; and that his diagnosis included status post lumbar disc surgery with residual pain and obesity. (Tr. 16). The court notes that Dr. Silvermintz further reported that Plaintiff had surgery for a ruptured disc two weeks prior to his examination; that Plaintiff said that since surgery she had pain which extended down into her left leg and around to her back; that Plaintiff's extremities were without malformation, swelling, or edema and she had no range of motion limitation; that she got on the examination table without difficulty and had difficulty getting off; and that Plaintiff was moderately obese. Also, in a Medical Source Statement Dr. Silvermintz reported that Plaintiff can lift less than ten pounds; that she is limited to walking and/or standing to less than two hours in an 8-hour workday; that she is frequently limited in regard to climbing, balancing, kneeling, crouching, crawling, stooping and manipulative functions.

The court notes that Dr. Schoedinger treated Plaintiff in 2002 while Dr. Lange saw Plaintiff in 2003. Further, as stated above, Dr. Schoedinger did not suggest that Plaintiff can not perform any work, only that she was unable to perform her past work which involved heavy lifting. Indeed, Dr. Lange's March 2003 report and findings upon examination, including that Plaintiff had a fifteen percent disability, that she said her back pain was negligible, and that she had signs of symptom magnification, are inconsistent with Plaintiff's being disabled. The court further finds, therefore, that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence through Dr. Lange's evaluation of March 31, 2003.[6] Dr. Lange's evaluation of Plaintiff, however, was prior to her having disc surgery in July 2004 and prior to her being evaluated by Dr. Silvermintz.

---

[6] The record does not reflect that Dr. Schoedinger treated Plaintiff after she was seen by Dr. Lange.

While the ALJ properly attempted to recontact Dr. Schoedinger to resolve conflicts which he believed were present in the record, the ALJ's obligation did not end there. He nonetheless had the duty to fully and fairly develop the evidence. See Brown v. Heckler, 827 F.2d 311, 312 (8th Cir. 1987); Brissette v. Heckler, 730 F.2d 548, 549 (8th Cir. 1984), Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Pursuant to this duty, the record reflects that the ALJ secured a consulting examination of Plaintiff by Dr. Silvermintz in July 2004 but that Dr. Silvermintz's examination of Plaintiff was conducted just two and half weeks subsequent to Plaintiff's undergoing disc surgery.

The form which Dr. Silvermintz completed in July 2004 states that Plaintiff can lift less than ten pounds frequently and stand and/or walk less than two hours in an 8-hour work day. It also states that Plaintiff is *frequently limited* in regard to climbing, balancing, kneeling, crouching, and stooping and that she has manipulative limitations. Nonetheless the ALJ found that Plaintiff had the RFC to lift and carry ten pounds as well as stand and walk occasionally. He further found that Plaintiff has the RFC to perform the full range of sedentary work.

20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart,

392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7). Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

As such, Dr. Silvermintz's findings are inconsistent with Plaintiff's ability to engage in the full range of sedentary work. The court finds, therefore, that substantial evidence on the record does not support the ALJ's decision finding that Plaintiff can engage in the full range of sedentary work for the period of March 31, 2003, through the date of the ALJ's decision. Considering the incompleteness of the record discussed above, the court further finds that the record is insufficiently developed. The court will, therefore, reverse this matter and remand it to the ALJ so that the record can be fully developed in accordance with this decision. Upon remand the ALJ should seek an additional consulting examination of Plaintiff so that Plaintiff's ability to work after March 31, 2003, can be determined. The ALJ may again refer Plaintiff to Dr. Silvermintz or other appropriate physician. As the record does not include records relevant to Plaintiff's 2004 disc surgery, upon remand the ALJ should give Plaintiff the opportunity to produce these records as well as other relevant records. Additionally, upon remand the ALJ should consider the specific requirements of sedentary work and determine whether Plaintiff meets these criteria. Should the ALJ determine that Plaintiff has non-

exertional limitations, the ALJ should not rely on the Guidelines and should seek the testimony of a vocational expert. The ALJ should be mindful that SSR 83-10, 1983 WL 31251, at * 6, defines a nonexertional impairment as "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities." SSR 83-10, 1983 WL 31251, at *7, defines nonexertional limitation as "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities."

As the court is reversing and remanding this matter it need not address other issues raised by Plaintiff.

## VI.
## CONCLUSION

For the reasons fully set forth above, the court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence through March 31, 2003. The court further finds that the ALJ's decision is not supported by substantial evidence from April 1, 2003, through the date of the ALJ's decision, November 14, 2004. The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ is directed to fully develop the record in a manner consistent with this court's opinion. The court stresses that upon reversing and remanding this matter it does not mean to imply that the Commission should return a finding of "disabled." The court is merely concerned that the Commissioner's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Brief in Support of Complaint is **GRANTED** in part, and **DENIED**, in part. [Doc. 15]

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 10th day of May, 2006.          UNITED STATES MAGISTRATE JUDGE